UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
THYAIS T. BROWN-NEWBALL,

                Plaintiff,

- against -

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[1]

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-4344 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Thyais T. Brown-Newball ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g), 1383(c) against the former Acting Commissioner of Social Security ("Commissioner"). Plaintiff seeks judicial review of the decision of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 8, 10.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

### I. Procedural History

      Plaintiff filed an application for SSI on September 25, 2018, claiming that she had been disabled since August 2, 2015, when one of her children was born stillborn. (*See* Dkt. 7 ("Tr.")[2]

---

[1] Martin O'Malley became the Commissioner on December 20, 2023, and is substituted for the former Acting Commissioner, Kilolo Kijakazi. *See* Commissioner Martin O'Malley, Soc. Sec. Agency, https://www.ssa.gov/agency/commissioner/ (last visited Sept. 9, 2024).

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript appearing in the lower right corner of each page, and not to the internal pagination of

112–13.) [3]   The claim was initially denied on January 30, 2019, and was denied upon reconsideration on March 29, 2019. (*See id.* at 124, 133.)  On April 26, 2019, Plaintiff requested a hearing, (*see id.* at 139–140), which was held in-person before administrative law judge ("ALJ") Barbara Dunn on October 3, 2019, (*see id.* at 42–70).  The ALJ held a supplemental hearing on August 12, 2022. (*Id.* at 71–97.)  By decision dated October 5, 2022, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from the application date of September 25, 2018 through the date of the ALJ's decision. (*Id.* at 10–29.)  On February 23, 2023, Plaintiff requested a review of the decision by the Appeals Council. (*Id.* at 528–530.)  The Appeals Council denied the request for review on April 14, 2023. (*Id.* at 1–6.)  Based upon this denial, on June 13, 2023, Plaintiff timely[4] filed this action seeking reversal or remand of the

---

the constituent documents or the pagination generated by the Court's CM/ECF docketing system. (*See* generally Tr.)

[3] Although parts of the administrative transcript in this matter indicate that Plaintiff's alleged onset date was August 1, 2017, the Court cites August 2, 2015, as Plaintiff's alleged onset date based on both the administrative law judge's reference to August 2, 2015, as the alleged onset date and on ample record evidence indicating that the birth occurred on August 2, 2015. (*Compare, e.g.*, Tr. 100, 440, *with, e.g., id.* at 10, 113, 451, 465, 550, 558.)

[4] Section 405(g) provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)).  Here, the Commissioner's decision became final when the Appeals Council denied review on April 14, 2023.  Plaintiff commenced this action on June 13, 2023—60 days after the Appeals Council denied review.  Therefore, this action is timely.

2

ALJ's decision. (Dkt. 1 at ECF 3.)[5]

## II. ALJ's Decision

An ALJ applies a five-step inquiry to evaluate Social Security disability claims. *See Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (explaining that plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step). Here, at steps one and two, the ALJ found that Plaintiff had not performed substantial gainful activity since the alleged onset date and that she had the severe impairments of "post-traumatic stress disorder ('PTSD'); anxiety disorder; depressive disorder; and bereavement[.]"[6] (Tr. 12–13.) At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P—specifically, those contained in "paragraph B"—and that Plaintiff had the residual functional capacity ("RFC") to perform simple, routine work "with no complex or detailed instructions, no fast-paced production requirements, no public contact, and only occasional coworker and supervisory contact." (*Id.* at 13–27.) At step four, the ALJ found that Plaintiff had no past relevant work at the substantial gainful activity level within the past 15 years. (*Id.* at 27.) At step five, the ALJ found that Plaintiff could perform several jobs that exist in significant numbers in the national economy, specifically, cleaner, stocker/checker, or marker. (*Id.* at 27–28.) Thus, the ALJ concluded that the Plaintiff was not disabled under the Act. (*Id.* at 29.)

---

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[6] Although the section header of the relevant portion of the ALJ's decision referred to Plaintiff's "application date," the ALJ's analysis found that "there is no indication of substantial gainful activity after the alleged onset date." (Tr. 12–13.)

3

**STANDARD OF REVIEW**

A district court reviewing a final decision of the Commissioner must determine whether the "correct legal standard[s]" were applied and whether there is "substantial evidence in the record" to support the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam); *see* 42 U.S.C. § 405(g). "[T]he ALJ generally has an affirmative obligation to develop the administrative record." *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)) (internal quotation marks omitted). An ALJ's failure to develop the record adequately is a basis to vacate the decision. *See Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009). As for determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). However, "it is up to the agency, and not [the reviewing] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

**DISCUSSION**

**I.     Failure to Develop the Record**

First, the ALJ failed to develop the record to reconcile purported inconsistencies between the opinion of Plaintiff's longtime treating psychiatrist, Joseph Voigt, M.D. ("Dr. Voigt"), and other evidence.[7] *See Heuser v. Comm'r of Soc. Sec.*, No. 20-CV-3601 (PKC), 2022 WL 970746, at *6 (E.D.N.Y. Mar. 31, 2022). "Although the treating physician rule has been abolished," "courts often find that an informed decision could not be reached where an ALJ failed to obtain opinion

---

[7] Although the opinion appears to have been jointly submitted along with Plaintiff's longtime treating therapist, Nicole Nejad, L.M.S.W., (*see* Tr. 24, 871, 875), for concision, the Court here refers to the opinion as Dr. Voigt's opinion.

4

evidence from the plaintiff's long-term treating physicians[.]" *See Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 18, 35–36 (S.D.N.Y. 2022).

Here, Dr. Voigt opined that Plaintiff had "moderate" limitations with respect to concentration, persistence, or maintaining pace, and "marked" limitations with respect to interacting with others and adapting or managing herself. (Tr. 881; *see also* Tr. 24); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b) (indicating that a claimant who shows marked limitation of two paragraph B criteria is disabled under the Act). The ALJ accepted Dr. Voigt's opinion regarding Plaintiff's "moderate" limitations, but concluded that the portions of Dr. Voigt's opinion finding that Plaintiff had "marked" limitations conflicted with "the record as a whole, including the results of the Mental Status Examinations in the treatment notes." (Tr. 24.)

To the extent that the ALJ perceived internal inconsistencies within Dr. Voigt's opinion, the ALJ should have sought clarification from Dr. Voigt regarding these seeming inconsistencies. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion."); *Heuser*, 2022 WL 970746, at *6 (collecting cases); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings [supporting the treating physician's opinion] were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."). Because the record is therefore incomplete, the Court is unable to evaluate whether substantial evidence supported the ALJ's findings regarding the severity of Plaintiff's mental impairments and her RFC. *See Perez v. Comm'r of Soc. Sec.*, No. 22-CV-4545 (PKC), 2023 WL 6308051, at *7 (E.D.N.Y. Sept. 28, 2023).

5

## II. Failure to Sufficiently Support RFC Determination

Second, the ALJ failed to support her RFC determination with substantial evidence. Although Plaintiff frames the ALJ as having "cherry-pick[ed]" medical evidence, (*see* Dkt. 8-1 ("Pl.'s Mem.") at 16–19), the Court finds that the ALJ erred by not accounting for the episodic nature of Plaintiff's PTSD and the controlled environment in which Plaintiff underwent routine mental health evaluations.

The ALJ limited Plaintiff's RFC to "occasional coworker and supervisory contact." (Tr. 27.) A limitation to "occasional" interaction, however, amounted to a determination that Plaintiff could interact with others for up to one-third of a workday. *See, e.g.*, SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983); (*see also* Pl.'s Mem. at 10–13 (arguing that the ALJ failed to incorporate all of Plaintiff's limitations and restrictions in finding that she was, *inter alia*, limited to occasional coworker and supervisor contact)). This limitation ignores Plaintiff's "episodic and unpredictable" PTSD, which the record showed could cause Plaintiff to "suffer severe symptoms from PTSD at any time during a workday, making [her] unable to maintain steady employment." *See Levesque v. Comm'r of Soc. Sec.*, No. 22-CV-995 (DNF), 2023 WL 5125207, at *3 (M.D. Fla. Aug. 10, 2023); *see also Paul G. v. Saul*, No. 18-CV-1054 (TJM), 2020 WL 9848451, at *9 (N.D.N.Y. Mar. 17, 2020) ("Although PTSD may not be degenerative in the same classic sense as a condition like diabetes, PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation[.]" (quoting *Jones v. Chater*, 65 F.3d 102, 103–04 (8th Cir. 1995)). Indeed, ample evidence before the ALJ reflected that Plaintiff had struggled to maintain employment precisely because of her "flashes," which came on suddenly and without warning, lasted an unknown amount of time, and caused Plaintiff to lose cognizance of her surroundings and behavior—including several instances where Plaintiff attacked or

6

frightened people in her immediate vicinity. (*See, e.g.*, Tr. 54, 56–57, 60–62, 82–85, 734; *see also* Pl.'s Mem. at 11–12.) Although Plaintiff only had "flashes" approximately three times a week, (*see* Tr. 14–15, 19, 50, 81), the ALJ's decision does not explain how the frequency and severity of Plaintiff's flashes lead to the conclusion that Plaintiff could interact with others for up to one-third of a workday, and therefore is not supported by substantial evidence. *See Levesque*, 2023 WL 5125207, at *3; *Vogelsang v. Comm'r of Soc. Sec.*, 657 F. Supp. 3d 450, 466 (S.D.N.Y. 2023) ("Since the ALJ has not provided an explanation for how he interpreted the record to show only a moderate limitation . . . , the Court cannot conclude that he relied on substantial evidence in reaching this determination.").

Similarly, the ALJ did not account for the structured environment in which Plaintiff underwent mental health evaluations. "It is not logical to assume Plaintiff's [success] in these . . . instances would translate to a workplace setting or otherwise negate a finding of marked . . . limitations[.]" *See Vogelsang*, 657 F. Supp. 3d at 466; *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order) (holding that ALJ erred by finding that plaintiff's "largely normal" mental status examinations and ability to undertake certain day-to-day activities meant that plaintiff could work for sustained periods). "The ALJ instead should have addressed whether and to what extent Plaintiff's well-documented symptoms and recognized . . . mental impairments would be exacerbated if she was required to work." *Janita H. v. Comm'r of Soc. Sec.*, No. 21-CV-5199 (GRJ), 2023 WL 196158, at *7 (S.D.N.Y. Jan. 17, 2023). Indeed,

> [t]he Commissioner's own regulations recognize there is a difference between a claimant's ability to complete tasks in a structured environment versus the ability to complete tasks in a demanding work setting. The regulations state in relevant part that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not

7

> necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."

*Id.* (quoting 20 C.F.R. Subpt. P, App. 1 § 12.00(C)(6)(b)).  Thus, an ALJ must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting." *See Primo v. Berryhill*, No. 17-CV-6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019), *R. & R. adopted sub nom. Primo v. Comm'r of Soc. Sec.*, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021).

To that end, Plaintiff testified that she felt "very safe" when she met with Nejad and Dr. Voigt—testimony that is consistent with Dr. Voigt's reports that Plaintiff experienced minimal hallucinations or "flashes" while meeting with him, but that does not necessarily support the conclusion that Plaintiff would not experience such flashes in a work setting.  (Tr. 62; *see also* Dkt. 10-1 at 12–13 ("[O]n some occasions, Dr. Voigt documented hallucinations were present[.]").)  "A mental health patient may have good days and bad days; she may respond to different stressors that are not always active." *Evans v. Comm'r of Soc. Sec.*, No. 21-CV-4876 (AMD), 2023 WL 2667005, at *8 (E.D.N.Y. Mar. 28, 2023) (quoting *Corbeil v. Saul*, No. 17-CV-1321 (JJM), 2019 WL 2590606, at *5 (W.D.N.Y. June 25, 2019)) (internal quotation marks omitted).  Thus, "particularly with respect to mental health disorders, periods of improvement, without more, are not conclusive evidence of the overall state of an individual's mental health disorder." *Miranda v. Comm'r of Soc. Sec.*, No. 22-CV-4358 (KAM), 2024 WL 2053854, at *13 (E.D.N.Y. May 8, 2024) (citing *Colgan v. Kijakazi*, 22 F.4th 353, 362 (2d Cir. 2022)).  On remand, the ALJ should consider the extent to which Plaintiff's documented symptoms and recognized mental impairments would manifest or be exacerbated in a work environment, as opposed to in a therapy session.

8

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 9, 2024
    Brooklyn, New York